IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUNNY CORRAL MANAGEMENT, LLC, ET AL. | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | NO. 3-08-CV-1104-M |
| ZURICH AMERICAN INSURANCE COMPANY, ET AL. | § § § § | |
| Defendants. | § | |

**FINDINGS AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants Zurich Warranty Solutions, Inc. and Zurich American Insurance Company ("the Zurich Defendants"), and Defendants Federal Warranty Service Corporation and American Bankers Insurance Company of America, together known as Assurant Solutions ("the Assurant Defendants"), have filed separate motions for summary judgment in this civil action brought by plaintiffs arising out of a fixed-price restaurant equipment repair and maintenance insurance program marketed and sold by DineAssured, LLC ("DineAssured"). In their complaint, plaintiffs allege that they were fraudulently induced to enter into three Facilities Maintenance Agreements ("FMAs"), which ostensibly covered repairs and maintenance to equipment at their Golden Corral restaurants in Florida, Indiana, Tennessee, Alabama, and Georgia. (*See* Plf. Orig. Pet. at 9, ¶ 24).[1] The FMAs

---

[1] Sunny Corral Management, LLC ("Sunny") operates Golden Corral restaurants in Florida, Indy Corral, LLC ("Indy") operates Golden Corral restaurants in Indiana, and TAG Corral, LLC ("TAG") operates Golden Corral restaurants in Tennessee, Alabama, and Georgia. (*See* Plf. MSJ (Zurich) Resp. App. at 2, ¶ 4; Plf. MSJ (Assurant) Resp. App. at 1, ¶ 2). In 2006, Sunny, Indy, and TAG entered into separate FMAs with DineAssured. (*See* Plf. MSJ (Zurich) Resp. App. at 2, ¶¶ 5-6 & 142-45; Plf. MSJ (Assurant) Resp. App. at 4, ¶ 11; Zurich MSJ App. at 3-8, 9-21 & 22-34). The FMA between DineAssured and Sunny states that insurance will be provided by the Zurich Defendants, (*see* Zurich

allegedly were backed by "embedded" insurance policies to be issued either by the Zurich Defendants or the Assurant Defendants. (*Id.* at 6, ¶ 15). Although plaintiffs paid approximately $240,000 in premiums under the FMAs, neither DineAssured nor the defendants have compensated any of the vendors who provided more than $300,000 in equipment maintenance and repair services at the restaurants. (*Id.* at 11, ¶ 29). When it became clear that the defendants would not pay the vendors, plaintiffs filed this action for breach of contract, breach of the duty of good faith and fair dealing, fraud, negligence, unjust enrichment, civil conspiracy, aiding and abetting, joint enterprise, and violations of the Texas Insurance Code ("TIC") and the Texas Deceptive Trade Practices Act ("DTPA").[2] Defendants now move for summary judgment as to all claims and causes of action. The issues have been briefed by the parties, and the motions are ripe for determination.

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the burden shifts to the nonmoving party to produce evidence or designate specific facts in the record

---

MSJ App. at 3), while the FMAs between DineAssured, on the one hand, and Indy and TAG, on the other hand, state that insurance will be provided by the Assurant Defendants. (*See id.* at 10, 23).

[2] In a separate lawsuit, plaintiffs sued DineAssured and related parties for damages resulting from their failure to pay claims under the FMAs. After settling with one defendant, plaintiffs obtained a default judgment against DineAssured and the other defendants. Neither the Zurich Defendants nor the Assurant Defendants were parties to that litigation. *See Sunny Corral Management, LLC, et al. v. DineAssured, LLC, et al.*, No. 3-07-CV-2050-L (N.D. Tex.).

showing the existence of a genuine issue for trial. *See Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Foulston Siefkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 214 (5th Cir. 2006).

The court initially observes there is no evidence that either the Zurich Defendants or the Assurant Defendants ever issued an equipment maintenance insurance ("EMI") policy to plaintiffs. Nor is there evidence that these defendants made any misrepresentations or had any direct dealings with plaintiffs in connection with the promotion and sale of the EMI program. Rather, plaintiffs' claims are based on DineAssured's alleged authority to act as the agent or ostensible agent of defendants. Whether such authority ever existed is a threshold issue raised by the Zurich Defendants and the Assurant Defendants in their motions for summary judgment.[3]

Under Texas law, which provides the rule of decision in this diversity case, an "agent's misrepresentations can create liability for the principal if the agent acts with actual or apparent authority." *TIG Ins. Co. v. Sedgwich James of Washington*, 276 F.3d 754, 760 (5th Cir. 2002), *citing Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 98 (Tex. 1994). "To confer actual authority, the principal must intentionally confer the authority, explicitly allow the agent to believe that it has the authority, or carelessly permit the agent to believe it has the authority." *Id., citing Spring Garden 79U, Inc. v. Stewart Title Co.*, 874 S.W.2d 945, 948 (Tex. App.--Houston [1st Dist.] 1994, no writ). Apparent authority is created when "the principal act[s] in such a way that a reasonably prudent person would believe the agent could bind the principal." *Id., citing Biggs v. United States Fire Ins.*

---

[3] In view of the disposition of the agency issue, the court need not consider the other grounds upon which defendants seek summary judgment.

*Co.*, 611 S.W.2d 624, 629 (Tex. 1981). Stated differently, a person who seeks to bind a principal based on the agent's apparent authority must show that the principal "visibly confer[red] authority for the agent to perform a range of tasks that include the disputed action." *Id.* at 760-61, *citing Ames v. Great South Bank*, 672 S.W.2d 447, 450 (Tex. 1984). Although the existence of an agency relationship is usually a question of fact or a mixed question of fact and law, the court may make an agency determination when the material facts are not in dispute. *See Port Elevator Brownsville, L.C. v. Gutierrez*, 198 Fed.Appx. 362, 366, 2006 WL 2277226 at *3 (5th Cir. Aug. 8, 2006).

The summary judgment evidence shows that DineAssured solicited customers to purchase EMI policies from both the Zurich Defendants and the Assurant Defendants. (*See* Plf. MSJ (Zurich) Resp. App., Exhs. 5 & 16 at 112; Plf. MSJ (Assurant) Resp. App., Exh. 3; Zurich MSJ App. at 176-77, ¶ 7). There is also evidence that DineAssured transmitted applications, collected premium payments, and received, adjusted, and paid claims under EMI policies issued to customers other than plaintiffs. (*See* Plf. MSJ (Zurich) Resp. App. at 19, 21-22). However, there is no evidence that defendants intentionally conferred any authority on DineAssured to underwrite, issue, endorse, or bind EMI policies on their behalf. To the contrary, the Zurich Defendants expressly conferred such authority on Dan Slickman and his company, Universal Asset Management ("UAM"). That agency relationship was well known to DineAssured. In an email dated December 15, 2005, more than four months before the effective date of the FMAs, the Zurich Defendants advised Mark Bucher of DineAssured that "[y]ou are not our appointed agent. Dan [S]lickman is the agent of record." (*See* Zurich MSJ App. at 188). A follow-up email to Bucher clarified that "Zurich has contracted with UAM to quote policies to our insureds and act in an agency capacity for [the EMI] program." (*Id.*

at 193). Understanding that only UAM and Slickman had authority to bind the Zurich Defendants with respect to EMI coverage, DineAssured's own email disclaimer states:

> Insurance Notice: [DineAssured] offers full-service maintenance programs with an embedded insurance policy provided by ZURICH, NA and/or Zurich Warranty Solutions. *These policies are written and endorsed by Universal Asset Management, Mission Kansas, Dan Slickman, Agent.*

(*See* Plf. MSJ (Zurich) Resp. App. at 51, 80, 93) (emphasis added). This evidence, which is uncontroverted, dispels any notion that the Zurich Defendants explicitly allowed, or carelessly permitted, DineAssured to believe it had authority to obligate the company to provide EMI coverage to plaintiffs.

Nor is there any evidence that DineAssured had actual authority to bind the Assurant Defendants with respect to EMI coverage. The relationship between these parties is governed by a Service Contract Administration Agreement ("Service Agreement") dated May 1, 2006. (*See* Plf. MSJ (Assurant) Resp. App., Exh. 3). Under the Service Agreement, DineAssured is authorized to act as a broker for the sale of equipment maintenance service contracts between the Assurant Defendants and restauranteurs and to adjust claims arising under those contracts. (*See id.*, Exh. 3 at 3, ¶ 4(a) & 14-18). The Service Agreement expressly provides:

> [The Assurant Defendants] shall . . . be the Obligor on all Service Contracts sold by [DineAssured]. Unless indicated in Exhibit B, all Service Contracts sold pursuant to this Agreement shall be contracts solely between [the Assurant Defendants] and the Customer and no other person shall be a party thereto.

(*Id.* at 3, ¶ 4(a)). Nowhere does the Service Agreement authorize DineAssured to enter into equipment maintenance service contracts with customers on behalf of the Assurant Defendants. Moreover, the Assurant Defendants reserved the right to inspect, and to accept or reject, the

customer's equipment before entering into a contract. (*See id.* at 5-6, ¶ 6). To the extent EMI coverage was a component of the program, the Assurant Defendants were solely responsible for procuring such coverage. (*See id.* at 5, ¶ 5(f)). There simply is no evidence that DineAssured had authority to bind the Assurant Defendants with respect to EMI coverage. Indeed, the "Limitation of Authority" section of the Service Agreement expressly states that DineAssured is not authorized to, *inter alia*, "[m]ake any agreements with any persons on behalf of [the Assurant Defendants,]" and shall not "[i]ssue, write or otherwise make any presentation, statement, promise or warranty of any kind or nature with respect to the business of [the Assurant Defendants] unless specifically authorized in writing to do so[.]" (*Id.* at 17-18). Without evidence that the Zurich Defendants or the Assurant Defendants intentionally conferred authority on DineAssured to issue EMI policies on their behalf, or explicitly or carelessly permitted DineAssured to believe it had such authority, plaintiffs cannot establish actual authority.

The court reaches the same conclusion with respect to DineAssured's apparent authority. In an attempt to prove apparent authority, plaintiffs rely on a quote issued by the Zurich Defendants to Perales Management in connection with an application for EMI coverage for a Golden Corral restaurant in Texas. (*See* Plf. MSJ (Zurich) Resp. App. at 112-19).[4] Even if the court assumes that Perales Management refers to Sunny Corral Management, LLC, the quote still does not raise a fact question as to whether DineAssured had apparent authority to bind the Zurich Defendants with respect to EMI coverage. Nothing about the quote or the facts surrounding its issuance suggests that DineAssured was authorized to issue EMI policies on behalf of the Zurich Defendants. Rather, the

---

[4] The request for this quote originated with DineAssured and was prepared for the Zurich Defendants by its authorized agent, UAM. (*See* Plf. MSJ (Zurich) Resp. App. at 64-77, 85-92; Zurich MSJ App. at 176-77, ¶ 7).

quote is consistent with other evidence showing that DineAssured's authority was limited to soliciting customers and collecting premiums. (*See, e.g.* Zurich MSJ App. at 188, 193).

Plaintiffs further argue that the Zurich Defendants knowingly permitted DineAssured to use the Zurich name in marketing and promotional materials for the DineAssured program. (*See* Plf. MSJ (Zurich) Resp. Br. at 15). This argument fails for two reasons. First, only the acts of the principal, in this case the Zurich Defendants, are relevant to establishing apparent authority. *See TIG*, 276 F.3d at 760; *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952-53 (Tex. 1996). Second, there is no evidence that the Zurich Defendants allowed DineAssured to make such representations. In fact, the Zurich Defendants sent DineAssured a letter on February 20, 2006, prior to the effective date of the FMAs, demanding that it "cease and desist" use of the ZURICH® mark. (*See* Plf. MSJ (Zurich) Resp. App. at 100-01). The strongly-worded letter stated:

> To represent that Zurich is "backing" your company financially or otherwise and to create an impression of a partnership or other relationship in order to induce others to engage in certain business transactions or bolster your reputation with your clients was never authorized by Zurich.

(*Id.* at 100).

In an attempt to establish that DineAssured had apparent authority to bind the Assurant Defendants, plaintiffs point to language in an equipment maintenance agreement with DineAssured. This agreement provides, in pertinent part:

> Obligations under the agreement are fully insured under a Contractual Liability Service Contract Reimbursement Insurance Policy Issued by Assurant Solutions, Atlanta Georgia, also known as Federal Warranty Service Corporation, [ ] and American Bankers Insurance Company of Florida[.]

(Plf. MSJ (Assurant) Resp. App. at 5-6, ¶ 14; Assurant MSJ App. at 10 & 23). Like the marketing and promotional materials invoking the Zurich name, there is absolutely no evidence that the Assurant Defendants knew or had reason to know of the representations made by DineAssured in the equipment maintenance agreement with plaintiffs. Without such evidence, plaintiffs cannot prove apparent authority. *See TIG*, 276 F.3d at 761.

To the extent plaintiffs rely on section 4001.051 of the Texas Insurance Code, such reliance is misplaced. Section 4001.051 provides, in pertinent part, that:

> [A] person is the agent of the insurer for which the act is done or risk is taken for purposes of the liabilities, duties, requirements, and penalties provided by this title, Chapter 21, or a provision listed in Section 4001.009 if the person:
>
> (1)    solicits insurance on behalf of the insurer;
>
> (2)    receives or transmits other than on the person's own behalf an application for insurance or an insurance policy to or from the insurer;
>
> (3)    advertises or otherwise gives notice that the person will receive or transmit an application for insurance or an insurance policy;
>
> (4)    receives or transmits an insurance policy of the insurer;
>
> (5)    examines or inspects a risk;
>
> (6)    receives, collects, or transmits an insurance premium[.]

TEX. INS. CODE ANN. § 4001.051(b) (Vernon 2009). Under section 4001.009(b), which is expressly referenced in section 4001.051, a person who engages in any of these enumerated acts is an agent of the insurer for the purposes of Chapter 541 of the Texas Insurance Code, which prohibits unfair methods of competition and unfair or deceptive acts or practices. *See id.* § 4001.009(b). Although DineAssured was an agent of defendants for some purposes, such as soliciting insurance,

transmitting applications, and collecting premium payments, plaintiffs still must prove that DineAssured acted within the scope of its authority in making the fraudulent misrepresentations and committing the other acts giving rise to this suit. *See TIG*, 276 F.3d at 759. Section 4001.051, standing alone, does not create a fact issue for trial. *See Gutierrez*, 2006 WL 2277226 at *3, *quoting Charles E. Beard, Inc. v. Cameronics Tech. Corp.*, 729 F.Supp. 528, 531 (E.D. Tex. 1989), *aff'd*, 939 F.2d 280 (5th Cir. 1991) (agent's conduct is not presumed to be within the scope of his authority).

The only claims that do not require proof of actual or apparent authority are those for unjust enrichment, civil conspiracy, aiding and abetting, and joint enterprise. However, there is no evidence that defendants received any benefit from plaintiffs. Nor is there any evidence of an agreement between DineAssured and the defendants to commit an unlawful act, or evidence that defendants knowingly participated in DineAssured's alleged misrepresentations and wrongful conduct. Defendants are therefore entitled to summary judgment on plaintiffs' claims for unjust enrichment, civil conspiracy, aiding and abetting, and joint enterprise. *See, e.g. Advocare International L.P. v. Horizon Laboratories, Inc.*, No. 3-04-CV-1988-H, 2005 WL 1832116 at *7 (N.D. Tex. Aug. 2, 2005), *quoting Matagorda County v. Texas Ass'n of Counties County Gov't Risk Mgmt. Pool*, 975 S.W.2d 782, 785 (Tex. App.--Corpus Christi 1998), *aff'd*, 52 S.W.3d 128 (Tex. 2000) (to prevail on claim for unjust enrichment, plaintiff must show that defendant "wrongfully secured a benefit or had passively received one which it would have been unconscionable to retain"); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 623 F.Supp.2d 798, 809 (S.D. Tex. 2009) (to succeed on a conspiracy claim, plaintiff must establish, *inter alia*, an agreement or "meeting of the minds" about the claimed illegal object of the conspiracy); *Joe N. Pratt Ins. v. Doane*, No. V-07-07, 2008 WL 819011 at *10 (S.D. Tex. Mar. 20, 2008) (to establish liability for aiding and abetting in civil context,

plaintiff must establish that defendant had knowledge of the primary actor's tortious conduct and substantially assisted in bringing the conduct to fruition); *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 526 (Tex. 2002) (joint enterprise liability requires, *inter alia*, an agreement regarding the enterprise among members of the group and a common purpose to be carried out by the group).

## RECOMMENDATION

There is no evidence that DineAssured had actual or apparent authority to act on behalf of defendants with respect to the conduct made the basis of this suit. Nor is there any evidence to support plaintiffs' claims for unjust enrichment, civil conspiracy, aiding and abetting, and joint enterprise. Accordingly, the Zurich Defendants and the Assurant Defendants are entitled to judgment as a matter of law. Their motions for summary judgment [Doc. #54, 82] should be granted.[5]

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge

---

[5] The Zurich Defendants have filed a separate motion to strike certain evidence submitted by plaintiffs in opposition to their motion for summary judgment. None of this evidence, even if considered by the court, affects the disposition of the motion. Consequently, the motion to strike [Doc. #74] is denied as moot. *See Continental Casualty Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3-04-CV-1866-D, 2006 WL 984690 at *1 n.6 (N.D. Tex. Apr. 14, 2006) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: March 31, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE